Case 2:21-cv-01515-AJS-PLD   Document 53   Filed 02/03/23   Page 1 of 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICK STOLLAR, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 21-1515 |
| | : | |
| v. | : | Magistrate Judge Dodge |
| | : | |
| JOHN E. WETZEL & PA DOC, | : | |
| | : | |
| | : | |
| Defendants. | : | Electronically Filed. |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I.        STATEMENT OF THE CASE**

Plaintiff is an individual presently sentenced to death and incarcerated by the Commonwealth of Pennsylvania, Department of Corrections at the State Correctional Institution at Phoenix ("SCI-Phoenix"). He filed a civil rights complaint pursuant to 42 U.S.C. § 1983 arising out of his long-term confinement in the Capital Case Unit ("CCU") and naming as Defendants former-Secretary of Corrections John Wetzel and the Department of Corrections. ECF No. 13, *generally*. Defendants filed a Motion to Dismiss in response to his Complaint, and Plaintiff submitted an Amended Complaint ("AC") on January 24, 2013. ECF No. 49.

Plaintiff contends that he is intellectually disabled and suffering from a variety of mental health disorders. In the AC, Plaintiff provides a history of his mental illness, dating back to his reception at Allegheny County Jail, nearly twenty years ago. ECF No. 49, at ¶¶ 14-37. Plaintiff was placed in DOC custody in 2008, and recalls being transferred to at least two different facilities to participate in mental health treatments. Id., at ¶¶ 38-40.

Plaintiff further alleges that beginning in 2008, he was held in solitary confinement under harsh conditions that included, *inter alia*, a small cell, constant illumination, lack of social

interactions, lack of visitation, lack of congregate religious activities, and lack of access to educational services. Id., at ¶¶ 50-59. Plaintiff avers that these harsh conditions caused him to experience certain "physical symptoms or conditions … most of which still affect him." Id., at ¶ 121. Plaintiff maintains that his already compromised mental health was negatively impacted, as well. Id., at ¶ 122. Plaintiff contends that he endured these solitary confinement-like conditions until December 2019, when the Department implemented a new policy that addressed the harsh conditions of the CCU. Id., at ¶ 83. While he acknowledges that the conditions changed as a result of the new policy, Plaintiff maintains that he "and other death-sentenced prisoners remained segregated from the general prison population and were denied, among other things, the opportunity to participate in programming." Id., at ¶ 84.

Plaintiff asserts that his long-term confinement in the CCU violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Acct ("RA"), the Eighth Amendment prohibition against cruel and unusual punishment, and the Fourteenth Amendment. As relief, Plaintiff seeks declaratory and monetary relief. Id., at ¶ 5; Counts I-IV.

For the reasons explained in greater detail below, it is respectfully requested that the instant Motion to Dismiss be granted.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. See also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007), it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. See Connelly v. Lane Const. Corp., No. 14-3792, 2016 WL 106159, at *3-4 (3d Cir. Jan. 11, 2016). A complaint must "show" such an entitlement with its facts. Iqbal, 556 U.S. at 678-79. See Connelly, 2016 WL 106159, at *3-4; Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010); Phillips v. County of Allegheny, 515 F. 3d 224, 234-235 (3d Cir. 2008).

### III.   DISCUSSION

#### A. Plaintiff cannot incorporate averments from a separate action

In each of Plaintiff's separate Counts in the Amended Complaint, he includes an incorporation paragraph, seeking to incorporate in this action, "[a]ll relevant factual averments

contained in this complaint, and in Reid v. Wetzel, 18-CV-00176, Doc. 1 … ." ECF No. 49, at ¶¶ 125; 132; 138; and 147. It is respectfully submitted that Plaintiff may not do this.

Pursuant to the Federal Rules of Civil Procedure, "statements in a pleading may be adopted by reference ... in another pleading or in any motion." Fed. R. Civ. P. 10(c). "Although not explicitly stated within Rule 10(c), "it has been held that allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference." C. Wright & A. Miller, 5A Federal Practice and Procedure § 1326 (2012); see also Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd., 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011) ("A pleading may not adopt other pleadings from a wholly separate action.")." Prall v. Supreme Ct., 2012 WL 12904743, at *1 (D.N.J. Oct. 25, 2012).

Here, Plaintiff attempts to incorporate factual averments from a wholly separate action, something that is, respectfully submitted, impermissible under the rules. Accordingly, Plaintiff should not be permitted to incorporate, by reference, factual averments from a wholly different lawsuit to, and the pending Amended Complaint should be viewed as a stand-alone, operative pleading without reference to Reid v. Wetzel, *supra*.

**B. Defendant Wetzel is entitled to qualified immunity.**

**1.   Eighth Amendment**

Plaintiff brings an Eighth and Fourteenth Amendment claim against Defendant Wetzel relative to Plaintiff's prior placement on CCU. (ECF No. 49, at Counts I and II).[1] It is respectfully submitted that Defendant Wetzel is entitled to qualified immunity as to both of these Counts.

---

[1] The defense of qualified immunity is "available only for governmental officials when they are sued in their personal, and not in their official, capacity." Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990) (collecting cases).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." Id. (internal quotations omitted); see also al-Kidd, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" al-Kidd, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case be directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id., at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870

5

F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664.

The Supreme Court has emphasized the importance of the qualified immunity defense for public officials, including the requirement that a plaintiff present authority clearly establishing the right at issue. See Kisela v. Hughes, 138 S.Ct. 1148, 1152-53 (2018); District of Columbia v. Wesby, 138 S.Ct. 577, 589-91 (2018). Both the Supreme Court and this Court have emphasized the importance of the clearly established authority requirement in the context of claims addressing the administration of prisons. See Taylor, 135 S.Ct. at 2044-45 (2015) (no authority clearly established "a right to the proper implementation of adequate suicide prevention protocols" in a prison); Michtavi v. Scism, 808 F.3d 203, 207 (3d Cir. 2015) (applying Taylor and finding no clearly established authority holding that prison officials must treat certain medical conditions).

With respect to the Eighth Amendment claim in the instant matter, the Third Circuit Court of Appeals has already squarely decided this very issue, holding that Defendants were entitled to qualified immunity with respect to any claims under the Eighth Amendment arising out of the formerly restrictive conditions of the Capital Case Housing Unit. See Porter v. Pennsylvania Dep't of Corrections, et al., 974 F.3d 431 (3d Cir. 2020).

In Porter, the Third Circuit examined a prisoner's as-applied challenge, claiming that DOC defendants violated his rights under the Eighth and Fourteenth Amendments by continuing to confine him on the Capital Case Housing Unit for thirty-three years. Porter, at 436. The plaintiff inmate in Porter described the conditions on the CCU as essentially solitary confinement. Id. The Third Circuit found that a reasonable jury could find that the prolonged solitary confinement

described by the plaintiff violated the Eighth Amendment's prohibitions against cruel and unusual punishment. Id., at 447. But, the Third Circuit then held that the Defendants were entitled to qualified immunity on the Eighth Amendment claim because a survey of prior case law showed that Plaintiff's Eighth Amendment right was not clearly established as of that point. Id., at 450-451. On that basis, the Third Circuit held that Defendants were entitled to qualified immunity on the Eighth Amendment claim and affirmed summary judgment. Id., at 451.

The Third Circuit reached the same conclusion with respect to an Eighth Amendment claim by a capital case inmate in Johnson v. Pennsylvania Department of Corrections, et al., 846 Fed. Appx. 123, 129 (3d Cir. 2021). Johnson involved another challenge by an inmate to having been held in the CCU, in essential solitary confinement, for over twenty years. Id. In Johnson, with respect to the Eighth Amendment claim, the Third Circuit confirmed that it was bound by its prior holding in Porter, that the Eighth Amendment right in this context was not clearly established at the time of Porter's and Johnson's confinement on the CCU. Id. On that basis, the Third Circuit held that Defendants were entitled to qualified immunity for any Eighth Amendment violations and affirmed summary judgment. Id.; see also Williams v. Wetzel, No. CV 21-1248, 2022 WL 2869316, at *8 (E.D. Pa. July 21, 2022)(Defendants entitled to qualified immunity because Court is bound by Porter).

Here, Plaintiff was subjected to the same conditions of confinement on the CCU and time period as the plaintiffs in Porter and Johnson. As established by the Third Circuit in Porter, Plaintiff's rights were not clearly established, and Defendant Wetzel is entitled to qualified immunity and judgment in his favor on the Eighth Amendment claim.

    **2.    Fourteenth Amendment**

Plaintiff asserts that his substantive and procedural due process rights, under the Fourteenth Amendment, were violated as a result of his prolonged confinement in the CCU. ECF No. 49, at Count II. It is respectfully submitted that Plaintiff's claims fails because 1) Plaintiff had no liberty interest that triggered the due process discussed in Williams v. Sec'y Pennsylvania Dep't of Corr., 848 F.3d 549 (3d Cir. 2017) and 2) Williams expressly grants Defendants qualified immunity as to Fourteenth Amendment due process claims arising out of assignment to, and continued confinement in, the CCU.

Following the Williams and Porter decisions, it is clearly established that housing former-capital inmates who receive some form of sentencing relief in the CCU violates the 14th Amendment. Consequently, if Plaintiff had received any sentencing relief in the form of a successful PCRA or habeas action, due process in the form of a review of his current sentence posture and removal from the CCU pending re-sentencing would have occurred. Plaintiff has received no such relief and is therefore not similarly situated to the plaintiffs in Williams.

Plaintiff's claim of a violation of his due process rights under the Fourteenth Amendment indicates that he was not provided with individual reviews to support his continued confinement in the CCU. ECF No. 49, at ¶ 135. But that is not what Williams requires for prisoners who maintain active death-sentences with no pending sentencing or conviction relief. Moreover, Williams, by its explicit language, has granted Defendants qualified immunity as to Fourteenth Amendment due process claims arising out of assignment to and continued confinement in the CCU. Id., at 574.

For an inmate to have a liberty interest, "the right alleged must confer 'freedom from restraint which…imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Williams, 848 F.3d at 559 (quoting Sandin v. Conner, 515 U.S. 472

(1995)) (citation omitted and emphasis in original). To determine if a condition places an atypical and significant hardship, the Third Circuit uses a "two-factor inquiry: (1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." Id., at 560 (citing Shoats, 213 F.3d at 144).

The Supreme Court has expressly declined to articulate what baseline should be used "to measure what is atypical and significant in any particular prison system." Wilkinson, 545 U.S. at 223. In holding that death row inmates have no liberty interest in avoiding death row, the Fourth Circuit reasoned that where "state law mandates the confinement conditions to be imposed on offenders convicted of a certain crime and receiving a certain sentence, those confinement conditions are, by definition, the 'ordinary incidents of prison life' for such offenders." Prieto v. Clarke, 780 F.3d 245, 254 (4th Cir. 2015); see also Rezaq v. Nalley, 677 F.3d 1001, 1012 (10th Cir. 2012) (an inmate's expected conditions "will differ depending on a particular inmate's conviction and the nature of nonpunitive confinement routinely imposed on inmates serving comparable sentences.").

Williams and Porter explicitly did not extend their due process holdings to include inmates with an active capital sentence, and those cases support the application of qualified immunity as to Plaintiff's Fourteenth Amendment due process claims. If the liberty interest was not established prior to Williams, and Williams did not address the particular liberty interest at issue, there are no grounds to conclude that Plaintiff's liberty interest was clearly established.

There is no question that after Williams, in the Third Circuit, an inmate has "a due process liberty interest in avoiding . . . confinement on death row after their death sentences [have] been vacated." 848 F.3d at 570 (emphasis added). The Third Circuit explicitly has not extended this liberty interest to inmates confined pursuant to death sentences that have not been vacated. See

Porter, 974 F.3d at 438 n.2. ("In Williams, we did not decide whether inmates who have been granted resentencing hearings and vacatur have a procedural due process interest in avoiding continued solitary confinement."). Instead, holding an inmate with a valid death sentence under the prior conditions of the CCU is "not a significant or atypical hardship for them," and is "expressly within the 'expected perimeters of the sentence imposed.'" See Williams, 848 F.3d at 569. (quoting Sandin, 515 U.S. at 485). In analyzing whether the plaintiffs' situations rose above the level in Sandin (where there was no liberty interest in avoiding disciplinary custody for 30 days), the Third Circuit did not start counting the time until "after the initial justification for subjecting them to such extreme deprivation (their death sentences) ceased to exist." Id., at 561 (emphasis added). In both expressed and implied ways, the Third Circuit has made clear that holding inmates with an active death sentence in the prior CCU does not invoke a protected liberty interest.

Plaintiff's death sentence has never been vacated and remains active. See Com. v. Stollar, 84 A.3d 635 (Pa. 2014). As such, the ordinary incidents of prison life for Plaintiff were reflected by the conditions of the CCU, and not by the regulations meant for the general prison population. Applying the reasoning of Williams and Sandin, Plaintiff at no time had a liberty interest in avoiding continued confinement in the CCU. Further, Williams has expressly guaranteed qualified immunity protection to the Defendants for the exact type of Fourteenth Amendment claims brought here.

**C.  Plaintiff has failed to state an ADA or an RA claim**

Plaintiff brings claims under Title II of the Americans with Disabilities Act of 1990, ("ADA") and under § 504 of the Rehabilitation Act of 1973, ("RA") against the DOC. ECF No. 49, at Count III & IV).

10

Initially, Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act states, "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794. "Program or activity" also includes the operations of a State or local government department or agency. 29 U.S.C. § 794 (b)(1)(A). Prisons therefore fall within the statutory definition of public entities or programs. See e.g., Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1996).

"To establish a violation of Title II of the ADA or Section 504 of the RA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012) (citing 42 U.S.C. § 12132). Here, Plaintiff has failed to state a cognizable claim.

Plaintiff's ADA and RA claim against the DOC fails. Here, Plaintiff alleges that he is a "qualified individual," but he fails to provide any facts demonstrating that his mental health problems limited any major life activities. Furthermore, even if the facts asserted in his AC are sufficient for purposes of demonstrating that his mental health problems limited certain major life activities, he has nevertheless failed to aver that any discrimination to which he was subject, was *because* of the disability he asserts he has. Rather, the gravamen of his AC is that he was housed

11

in solitary-like confinement for an extended period of time because of his designation as a death row inmate, not because of any alleged disability.

Finally, to the extent Plaintiff may be seeking prospective injunctive relief for past ADA or RA violations, the request is moot as he is no longer subject to the restrictions previously imposed on death row inmates in the CCU. ECF No. 49, at ¶ 83). To the extent Plaintiff is seeking compensatory damages under the ADA, he has failed to allege "intentional discrimination under a deliberate indifference standard, as he must do to state a claim for compensatory damages. Furgess, 933 F.3d at 289." Sides v. Wetzel, 2021 WL 8017811, at *14 (W.D. Pa. Nov. 2, 2021), report and recommendation adopted, 2022 WL 1091915 (W.D. Pa. Apr. 12, 2022). In order for Plaintiff to show deliberate indifference, he "must allege that Defendants (1) had "knowledge that a federally protected right is substantially likely to be violated," and (2) failed "to act despite that knowledge." Snider v. Pennsylvania DOC, 2020 WL 7229817, at *19 (M.D. Pa. Dec. 8, 2020) (quoting Geness v. Admin. Office of Pennsylvania Courts, 974 F.3d at 263, 274, n.11 (3d Cir. 2020))." Hurd v. Pennsylvania Dep't of Corr., 2021 WL 1628129, at *6 (E.D. Pa. Apr. 27, 2021). Here, should this Court agree that Defendants are entitled to qualified immunity as to Plaintiff's Eighth and Fourteenth Amendment claims, it would axiomatic that they did not possess the requisite "knowledge that a federally protected right is substantially likely to be violated."

Accordingly, it is respectfully requested that Plaintiff's claims under the ADA and RA be dismissed, with prejudice.

WHEREFORE, it is respectfully requested that the instant Motion to Dismiss be granted and Plaintiff's Amended Complaint be dismissed, with prejudice.

Respectfully submitted,

Date: February 3, 2023

By: /s/ Yana L. Warshafsky
Yana L. Warshafsky
Assistant Counsel
Attorney I.D. No. 312915
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway, 3rd Floor
Mechanicsburg, PA 17050
717-728-7763

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within **BRIEF IN SUPPORT OF DOC DEFENDANTS' MOTION TO DISMISS** was electronically filed with the Court and served upon the following via first-class mail:

**Smart Communications/PADOC**
**PATRICK STOLLAR, HM 3365**
**SCI Phoenix**
**PO Box 33028**
**St Petersburg, FL 33733**

/s/ Yana L. Warshafsky
Yana L. Warshafsky
Assistant Counsel


Date:   February 3, 2023